LEORA GOODLETT, APPELLANT, V. BLUE CROSS AND BLUE SHIELD OF NEBRASKA, A CORPORATION, APPELLEE.

449 N.W.2d 9

Filed December 8, 1989.   No. 88-197.

Patrick W. Healey, of Healey, Wieland, Kluender, Atwood, Jacobs & Geier, for appellant.

Soren S. Jensen and J Russell Derr, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from an order of the Lancaster County District Court sustaining defendant's motion to dismiss at the close of plaintiff's case.

In considering a motion to dismiss or for a directed verdict at trial, this court has held that the trial court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. In considering the evidence for the purpose of such a motion, the party against whom a motion is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence; if there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989); *Looney v. Pickering*, 232 Neb. 32, 439 N.W.2d 467 (1989).

Leora Goodlett was employed in the customer service department of Blue Cross and Blue Shield of Nebraska (the employer) in the Lincoln office. Goodlett's supervisor informed her of complaints about her job performance from customers. The employer decided to transfer Goodlett to the Omaha office for closer supervision. Goodlett was directed to report for work in Omaha on January 6, 1986. Despite being warned about the consequences of the act, Goodlett reported for work on January 6 in Lincoln, and was served with a written request to leave the building because she was not authorized to be in the building. Goodlett's employment was subsequently terminated.

On July 24, 1986, Goodlett filed a petition alleging that her employment was terminated by the employer without following the disciplinary procedure contained in the employee handbook. The case was heard on January 26, 1988. At the close of Goodlett's evidence, the employer moved to dismiss, which motion was sustained. Goodlett has appealed to this court, contending the trial court erred in sustaining the motion.

On appeal, Goodlett first contends that the disciplinary procedure contained in the employee handbook created expectancies of continued employment which were contractual in nature. The employee handbook which was received into evidence provided for a four-step procedure for disciplinary action. The handbook noted:

Progressive disciplinary steps and formal grievance procedure ensure that no one is terminated for disciplinary reasons from employment without formal counseling to solve the employment problem.

. . . [T]hese progressive steps . . . ensure that no employee is terminated because of race, color, religion, national origin, age, sex, disability including pregnancy, or veteran status.

Step 1 provided that an employee was to be given an oral warning for the violation of a corporate policy. Step 2 provided for a written warning if the problem with the employee persisted. This step also provided, "The written warning explicitly describes the nature of the violations, date, times, places, and other pertinent details. Additional documentation

should be attached." Step 3 provided for formal probation if the problem continued. Formal probation could last 30, 60, or 90 days, during which time the employee was expected to resolve the problem or be terminated from employment. Step 4 provided that if the employee repeated the same problem within 1 year of the start of oral or written warning, the next disciplinary action would follow.

The law in Nebraska is quite clear that when the employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, generally, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring liability. *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988); *Stratton v. Chevrolet Motor Div.*, 229 Neb. 771, 428 N.W.2d 910 (1988); *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987); *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983). This court expanded this rule in *Morris, supra*, where we held that where an employment contract is for an indefinite duration, such indefiniteness by itself does not preclude job security provisions in an employee handbook from becoming part of the employment contract. In the present case, then, the procedure for disciplinary action could become part of Goodlett's oral contract of employment, and the employer could be liable for breaches of that contract.

However, viewing the evidence in the present case, we can reach only one conclusion: The employer did not breach the employment contract because the employer followed the disciplinary procedure contained in the handbook. On November 8, 1985, Goodlett received a disciplinary action report from Lori Rimington, who supervises Goodlett's immediate supervisor, Deb Hemmingsen. This report informed Goodlett that the employer had recently received a complaint from the State of Nebraska group that several of their employees had complained of lack of service and rudeness on Goodlett's part. The employer felt there was a need for closer supervision, and therefore directed Goodlett to report for work in the Omaha office on a permanent basis effective January 6, 1986. On November 14, 1985, Goodlett received a written memo from Rimington, which stated in pertinent part:

Formal disciplinary action begins with a written warning which describes the problem and the action to be taken to correct the specific problem. If definite progress is not shown within 2 weeks, formal probation would be the next step. However, if the problem is of a very serious nature and requires immediate attention, termination may be required without going through the entire disciplinary process.

As discussed with you last Friday, you were given a written warning because of complaints from a major group of lack of service which includes giving incorrect information and rudeness. These types of complaints are very serious since it could result in the loss of major group business. The purpose of the written warning was to provide a positive approach to remedying the situation by transferring you to the Omaha office on a regular basis effective January 6, 1986 where you would receive more direct supervision. The warning was for 90 days to allow you time to make the transition. The 90 day period was effective with our conversation on Friday, November 8.

Since our conversation Monday, November 11, I have received two additional complaints of incorrect information which will be discussed with you in the very near future.

Since the consequences of complaints from any group is [sic] serious and affects our marketing capabilities, any further complaints received after November 8 will result in immediate termination.

If you wish to discuss this further, please contact me or Dianna Wheeler in Human Resources.

The employer later offered Goodlett $500 reimbursement, should she decide to permanently relocate in Omaha. Through subsequent correspondence between Goodlett's attorney and the employer's attorney, Goodlett was warned that if she did not report for work in Omaha on January 6, her employment would be terminated.

Goodlett contends the employer violated the disciplinary procedure in several respects. She contends the company did not follow the procedural steps because they did not give her an

oral warning about her alleged misconduct and because they did not give her specific facts regarding the alleged complaints. We note here that Goodlett's own testimony was conflicting on whether oral notice was given. Even assuming, however, that oral notice was not given to Goodlett, this omission would not violate the employer's established disciplinary procedure. The handbook, following step 3, provides that "[i]f the offense is of a very serious nature and requires immediate action, the manager is not required to go through Steps 1 and 2." These provisions permit the employer to modify its disciplinary procedure in appropriate circumstances.

By the terms of the handbook, the employer was obligated to give neither oral warning nor explicit description of the violation, as required by steps 1 and 2, if the employer deemed the misconduct to be sufficiently serious. The November 14 memorandum indicates the employer regarded the situation as very serious. The employer, therefore, was not required to provide steps 1 and 2. The November 14 memorandum notifies Goodlett of the disciplinary procedure the employer will follow. Simply put, the employer followed the procedure set out in the employee handbook.

Second, Goodlett argues that where an employee handbook provides procedures to be followed before termination, certain due process requirements must be met. This due process, Goodlett contends, should include timely and adequate notice detailing reasons for the initiation of the action; effective opportunity to defend by confronting adverse witnesses; the opportunity for representation by counsel; an impartial decision maker; a decision resting solely on legal rules and evidence adduced at the hearing; and the decision maker's reasons for the decision and the evidence on which the decision was based.

Goodlett's arguments are misplaced. In order to maintain an action against an otherwise at-will employer, the contract relied on defines the due process to which the employee is entitled.

As noted above, the employer complied with the terms of the handbook. Therefore, the trial court's order dismissing the petition must be affirmed.

We observe that a separate grievance procedure is set forth in

the handbook. Goodlett chose not to accept the transfer and not to avail herself of the grievance procedure. She may not be heard to complain here of the consequences of her free choice.

AFFIRMED.