Jane PFISTER, Plaintiff,

v.

**BRYAN MEMORIAL HOSPITAL,**
Defendant.

No. 4:CV94–241.

United States District Court,
D. Nebraska.

Jan. 19, 1995.

---

Vincent M. Powers, Lincoln, NE, for plaintiff.

William A. Harding, Harding, Ogborn Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM and ORDER

PIESTER, United States Magistrate Judge.

Defendant Bryan Memorial Hospital has filed a motion for partial summary judgment (filing 25) and a motion to dismiss. (Filing 29.) For the reasons discussed more fully below I shall grant the motion for partial

summary judgment in part and grant the motion to dismiss in part.[1]

## BACKGROUND

Plaintiff, a certified registered nurse anesthetist, was formerly employed by Defendant Bryan Memorial Hospital ("defendant"). (Complaint, Filing 1, at ¶ 6.) Plaintiff alleges that on February 19, 1992 she reported to defendant that she had been sexually harassed by a co-worker. (*Id.*) In March 1992 she filed charges with the Nebraska State Department of Health ("NSDH") out of "concerns about the conduct of other employees and her work environment at Bryan Memorial Hospital . . . ." (*Id.* at ¶ 7.) On February 2, 1993 she received a written warning from the Chief Nurse Anesthetist; she had never previously received any such disciplinary action. (*See id.* at ¶ 10.) On February 19, 1993 plaintiff filed a complaint with the Nebraska Equal Opportunity Commission ("NEOC") alleging that defendant had retaliated against her in violation of Title VII of the Civil Rights Act of 1964. (Id. at ¶ 11.) The complaint stated that plaintiff believed she had been retaliated against for being a "whistleblower" by filing the NSDH charges. (*See* Evidence Index in Support of Defendant's Motion to Dismiss, Filing 30.) Specifically, plaintiff stated that she advised defendant of various "illegal activities" in her department, including intoxication, falsification of records, violations of patient confidentiality and a co-worker "verbally sexually harassing me by asking me to go to bed with him." (*See id.*) Plaintiff was terminated September 14, 1993. On February 4, 1994 the NEOC dismissed the charge, concluding that there was no reasonable cause for believing that defendant had violated the Nebraska Fair Employment Practice Act. (*See id.*)

Plaintiff filed this suit May 4, 1994, raising three claims:

(1) unlawful retaliation in violation of 42 U.S.C. § 2000(e);

(2) breach of employment contract under Nebraska law; and

---

1. The parties consented to have me preside at the trial and enter judgment pursuant to 28 U.S.C. § 636(c). (*See* filing 9.)

(3) violations of the First Amendment and *Neb.Rev.Stat.* § 20–148.[2]

(*See* Complaint.) In filing 27 I granted in part defendant's motion for partial summary judgment, dismissing that part of claim (3) alleging a violation of the First Amendment. However, I construed that claim as raising a retaliation claim under *Neb.Rev.Stat.* § 48–1114(03). (*See id.* at 3–4.) Thus, the following claims are properly before me:

(1) unlawful retaliation in violation of 42 U.S.C. § 2000(e);

(2) breach of employment contract under Nebraska law; and

(3) violation of *Neb.Rev.Stat.* § 48–1114(03).[3]

## DISCUSSION

### Motion to Dismiss

Defendant argues that plaintiff has not yet exhausted her administrative remedies with respect to her claim of "sex harassment," and that I should therefore dismiss it for lack of jurisdiction. (*See* Brief in Support, at 2–5.) This argument *mischaracterizes* plaintiff's claim. Plaintiff alleges that she was unlawfully retaliated against for reporting various "illegal activities" in her department to defendant, including sexual harassment. That retaliation claim, based in part on the underlying "illegal activity" of sexual harassment, was properly set forth in her "Charge of Employment Discrimination" filed with the NEOC, and thus was properly exhausted. (*See* Filing 30, Exh. "A".)

Defendant next argues that plaintiff's retaliation claim (1) is not protected under Title VII. Specifically, defendant argues that Title VII prohibits retaliation for opposing unlawful discrimination by "mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner *in an investigation, proceeding or hearing under this subchapter.*" 42 U.S.C. § 2000e–3(a) (emphasis added.) Defendant argues that plaintiff's retaliation claim falls outside section 2000e–3(a) because a complaint and/or proceeding before the Nebraska State Department of Health is not an "investigation, proceeding or hearing under this subchapter" within the meaning of that section. (*See* Brief in Support, at 7.)

Defendant misreads 42 U.S.C. § 2000e–3(a). That section provides:

*It shall be an unlawful employment practice for an employer to discriminate against any of his employees* or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, *because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.*

(emphasis added.) The statute clearly prohibits two forms of retaliation: (1) retaliation

---

**2.** *Neb.Rev.Stat.* § 20–148 provides:

(1) Any person or company, as defined in section 49–801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

(2) The remedies provided by this section shall be in addition to any other remedy provided by Chapter 20, article 1, and shall not be interpreted as denying any person the right of seeking other proper remedies provided thereunder.

**3.** *Neb.Rev.Stat.* § 48–1114 provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the act, or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state.

for "oppos[ing] any practice made an unlawful employment practice by this subchapter" (the "opposition" clause); or (2) retaliation for "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter" (the "participation" clause). *See, e.g., Wyatt v. City of Boston,* 35 F.3d 13, 15 (1st Cir.1994); *Holden v. Owens–Illinois, Inc.,* 793 F.2d 745, 748 (6th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986); *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1135 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Parker v. Baltimore & O.R. Co.,* 652 F.2d 1012, 1019 (D.C.Cir.1981); *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1043 (7th Cir. 1980).

Defendant's argument rests on the "participation" clause. Although not raised as such, plaintiff's claim appears to seek relief under the "opposition" clause, alleging that she was retaliated against for "opposing" (among other "illegal activities") sexual harassment by reporting it to her supervisors and eventually filing a charge with the Nebraska State Department of Health. Nowhere has defendant suggested that plaintiff has failed to plead a *prima facie* case under the "opposition" clause.

■ As sexual harassment is an unlawful employment practice under Title VII, and plaintiff has alleged she was retaliated against (at least in part) for "opposing" such harassment, her claim appears to fall within the "opposition" clause of 42 U.S.C. § 2000e–3(a). Accordingly, I shall deny defendant's motion to dismiss as to plaintiff's "opposing" the alleged sexual harassment. However, I shall grant defendant's motion to dismiss as to plaintiff's "opposing" the other "illegal activities" which do not appear to be protected under Title VII.

Motion for partial summary judgment

Defendant argues that it is entitled to summary judgment on plaintiff's "claims of sex harassment and breach of contract...." As discussed above, plaintiff has not presented a "claim of sex harassment" but rather a claim of *retaliation* for "opposing" the Title VII–protected unlawful employment practice of sex harassment. I therefore address only the breach of contract claim.

1. *Summary Judgment*

■ Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 863 (8th Cir.1993). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## 2. Breach of Contract

Defendant argues that plaintiff was an at-will employee, that she admitted that she signed a document acknowledging this, and that that status was not modified by defendant's employee handbook. (*See* Brief in Support, at 12.) Plaintiff responds that the defendant's employee handbook created an implied contract modifying her at-will status. (*See* Brief in Opposition, at 2–6.)

An at-will employee's status can be modified by contractual terms created by an employee handbook. *See, e.g., Hillie v. Mutual of Omaha Ins. Co.*, 245 Neb. 219, 223, 512 N.W.2d 358 (1994); *Overmier v. Parks*, 242 Neb. 458, 462, 495 N.W.2d 620 (1993). To do so, however

> the language ... must meet the requirements for formation of a unilateral contract.... In other words, the language must constitute an offer definite in form which is communicated to the employee, and the offer must be accepted and consideration furnished for its enforceability.

*Hillie*, 245 Neb. at 224, 512 N.W.2d 358 (citations omitted.) With respect to acceptance and consideration,

> The employee's retention of employment constitutes acceptance of the offer of [the] unilateral contract because by continuing to stay on the job although free to leave, the employee supplies the necessary consideration for the job.

*Overmier*, 242 Neb. at 462, 495 N.W.2d 620. It is plaintiff's burden to prove the existence of the contract and all the facts essential to the cause of action. *Hillie*, 245 Neb. at 224, 512 N.W.2d 358.

Here, plaintiff has failed to carry her burden of demonstrating that defendant's employee handbook constitutes a unilateral contract modifying her at-will employment status. Plaintiff identifies no specific language in the handbook arguably constituting such a unilateral contract, relying instead upon the assertion that language in an employee handbook to the effect that it is not intended to create a contract has no legal meaning. (*See* Brief in Opposition, at 2.) Proving that such language has "no legal effect" is not the same as demonstrating the existence of a unilateral contract, however, which is plaintiff's burden.

Plaintiff's second attempt to do so again fails to point to any specific language in the employee handbook, but instead relies upon the deposition testimony of Douglas McDaniel, the Human Resources Director for the defendant. Plaintiff quotes from McDaniel's deposition during which McDaniel stated the following in response to a question of what disciplinary procedures applied to trainees in Bryan's 90–day training program:

> The orientation period is just that: it is a time for people to be oriented to the job. We state within our practice and policy in the handbook that either party may choose to terminate the employment relationship during that—that orientation period.

(Brief in Opposition, at 4.) Plaintiff argues that

> In other words during the first 90 days according to McDaniel, an employee may choose to terminate his or her job. But after 90 days the employee cannot terminate his or her job with Bryan? This Court cannot find as a matter of law that McDaniel's statement means that after 90 days of employment employees cannot resign their position at Bryan but that Bryan can fire that employee at will. What happens after the 90 day orientation period is that Bryan offers employment to the employee, and should the employee accept, there is an implied right of contract.

(*Id.* at 4–5.) The logic of this argument is not readily apparent. Plaintiff has not explained where McDaniel (or the handbook) states that "after 90 days the employee cannot terminate his or her job with Bryan...." Rather, McDaniel appears to be simply explaining that during this orientation period either Bryan or the trainee can terminate the trainee's employment. Nowhere does McDaniel state or imply that after the 90–day period either Bryan or the employee cannot terminate the employment relationship.

Plaintiff next argues that since she has alleged that various "procedures set forth in the hand book [sic]" were not followed, and since defendant has not raised

that issue at all, a genuine issue of material fact exists and summary judgment must be overruled. (*See id.* at 6.) Regardless of whether there are procedures set forth in the defendant's employee handbook that were not followed, the determinative issue remains whether the language setting forth those procedures "me[t] the requirements for formation of a unilateral contract." *Hillie, supra.* Plaintiff has not specified which "procedures" in the handbook were not followed, nor has plaintiff explained why that language should be construed as a unilateral contract.[4] As plaintiff has failed to carry her burden of demonstrating the existence of a unilateral contract created by language contained in defendant's employee handbook, I shall grant defendant's motion for partial summary judgment as. to this claim.[5]

IT THEREFORE HEREBY IS ORDERED:

1. Defendant's motion to dismiss (filing 29) hereby is granted in part as discussed in the accompanying memorandum.

2. Defendant's motion for partial summary judgment (filing 25) hereby is granted with respect to plaintiff's breach of contract claim.

3. Plaintiff's motion for an extension of time in which to respond to defendant's motion for partial summary judgment (filing 33) is denied as moot.

4. Plaintiff's motion to amend the pretrial order to list additional exhibits (filing 34) is granted.

5. Plaintiff's motion to amend the pretrial order to allow certain witnesses to testify (filing 35) is granted.

6. Defendant's motion to strike plaintiff's list of special damages claimed (filing 42) is denied without prejudice to any post-verdict motions filed.

---

4. The complaint alleges that plaintiff "filed a grievance with the defendant pursuant to her contractual rights as a employee [sic] with the defendant" and that an "arbitrary and capricious" hearing was later held ruling against that grievance." (Complaint, Filing 1, at ¶ 12.) Plaintiff further alleges that "[u]nlike other employees, plaintiff was not given a hearing nor placed on suspension for her alleged violation but was terminated for allegedly being a disruptive influence in the work force." (*Id.* at ¶ 15.) Finally, plaintiff alleges that up until the time of her termination she had "complied with the defendant's rules and policies and had performed her work satisfactorily." (*Id.* at ¶ 16.) None of these allegations reveals how any specific handbook "procedure" was not followed, much less how any specific handbook "procedure" consti-

tuted a "unilateral contract" between plaintiff and defendant modifying her at-will employment status.

5. Plaintiff also argues that should I not find an implied contract created by the language of the employee handbook, Nebraska's public policy exception to plaintiff's terminable-at-will employment should apply, citing *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988). (Brief in Opposition, at 6–8.) As this issue was not raised in the pleadings or preserved in the pretrial order, and is beyond the scope of the specific issue of whether defendant's employee handbook created a unilateral contract, I do not address it.